# Buck *versus* Commonwealth.

1. Where a tax collector, under a warrant duly issued by a borough council, directing the collection of a tax that had been properly levied by the borough, collects a tax from a person who it was subsequently shown had been improperly assessed by the assessor and county commissioners, he is not criminally liable therefor.

2. The Act of May 27th 1841 was directed against the voluntary payment and receipt of taxes to evade the election laws, and not against the enforcement of such payment by legal process, and it will not support an indictment for the latter charge.

April 1st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Quarter Sessions of *Northampton county:* Of January Term 1879, No. 89.

Indictment of Alfred Buck for receiving payment and giving a receipt for taxes which had not been duly assessed. The indictment was brought under the 8th sect. of the Act of May 27th 1841, Pamph. L. 402. ·

The facts were these: Daniel Ritter owned a house in Saucon township, adjoining the borough of South Bethlehem; the house

[Buck v. Commonwealth.]

being situated near the line of said borough. Buck was appointed collector of borough taxes, and was instructed by the town council to collect said taxes for 1878, for which he received his warrant and a duplicate drawn by the clerk from the assessment-book. In this duplicate Ritter's name appeared with a memorandum of the amount charged against him for the house and lot in question. On demand being made for the taxes by the collector, Ritter claimed that he was assessed in Saucon township, and paid his taxes there, and declined to pay. It appeared that the house actually was within the township limits. Buck applied to the town council to be exonerated from the collection of Ritter's taxes, but they refused his request, and directed him to proceed with his collection, on the ground that the assessment was regular. Snyder, the borough assessor, testified that the county commissioners had directed him to assess Ritter as of the borough, and he was accordingly assessed in the borough-book. Witness had returned his assessment-book to the commissioners' office without making any note therein of the valuation of Ritter's property. The town council having refused to exonerate Buck, and Snyder having informed him that Ritter's assessment was regular and proper, Buck proceeded to levy upon the horse and wagon of Ritter, who thereupon paid the tax. Buck gave a receipt therefor, and released the property seized.

The defendant submitted the following points, to which is appended the answer of the court, Meyers, P. J.:

3. There can be no conviction for a crime unless a criminal intent is laid and proven, and if the jury believe that the collector collected the tax because it was on his duplicate, because he had compared the duplicate with the assessor's-book, had applied to be exonerated and had been refused, had been shown the borough surveys locating Ritter in the borough, and been instructed by the burgess to proceed with the collection, and that he executed the orders in good faith, there can be no conviction.

4. If the jury believe that whatever mistake, if any, occurred by reason of the assessor's returning one book to the commissioners and a different book to the town clerk, from which the duplicate was drawn, and that the mistake was the assessor's mistake, there can be no conviction of the collector.

5. It was not the duty of the borough tax collector to go behind his duplicate, and the assessment-book exhibited to him by the assessor of the borough.

Answer to 3d, 4th and 5th points.—" The offence created by the 8th section of the Act of May 27th 1841, consists in the violation of certain provisions thereof by the public officers named therein; said violation consisting in the commission by said officers of certain acts, which by said section are declared unlawful. In this case, the defendant was the collector of the borough taxes of the borough

[Buck *v.* Commonwealth.]

of South Bethlehem, and if the jury find from the evidence, beyond a reasonable doubt, that at the time when the defendant demanded and received the tax from Daniel F. Ritter, he, the defendant, was informed by the said Ritter that he resided in the township of Lower Saucon; that he had no property in the borough of South Bethlehem; that he had been assessed for the year 1877 in the township of Lower Saucon, and had paid his taxes there; and if the jury should further find, beyond a reasonable doubt, that the defendant, by his negligence, failed to use reasonable diligence to ascertain the fact whether Daniel F. Ritter had been duly assessed in the borough of South Bethlehem, and return of said assessment had been made to the office of the commissioners of this county, then, if the defendant received said tax under such circumstances, such act constitutes a violation of the provision of the 8th section of the Act of May 27th 1841."

The jury returned a verdict of "guilty," and defendant was sentenced to pay a fine of $100. He then took this writ, assigning for error, inter alia, the foregoing portion of the answer to his points

*W. E. Doster*, for plaintiff in error.—A collector is not liable for acts done in the execution of his precept, apparently regular and emanating from persons having authority over the subject. His warrant is his protection against all illegality except his own. When the warrant is regular on its face and issued by an authority having lawful power to issue it, the collector cannot inquire into and determine whether the power has been properly exercised: Moore *v.* Allegheny City, 6 Harris 55; Cunningham *v.* Mitchell, 17 P. F. Smith 81; Ford *v.* Clough, 8 Greenleaf 334; Johnson *v.* Goodridge, 3 Shepley 29; Holden *v.* Eaton, 8 Pick. 436. The Act of 1841, under which this indictment was framed, relates to offences against the election laws, and will not support the indictment.

*C. M. Anstett*, District Attorney, *E. J. Fox* and *S. V. B. Kachline*, for defendant in error.—There was not an assessment and return according to law. The assessment not having been duly returned to the commissioners·was void: McCall *v.* Lorimer, 4 Watts 351; Wharton *v.* Borough of Birmingham, 1 Wright 372. When a tax is attempted to be collected without any authority, all who are engaged in the collection are trespassers. Hence, if a collector is aware that a tax is not legally assessed and proceeds to collect it, he makes himself personally liable to an action: Wilson *v.* Borough of Lewistown, 1 W. & S. 430; School Directors *v.* Carlisle Bank, 8 Watts 294. The Act of 1841 will sustain the indictment.

Mr. Justice GORDON delivered the opinion of the court, May 7th 1879.

[Buck *v.* Commonwealth.]

In the case of Moore *v.* Allegheny City, 6 Harris 55, it was said, by Mr. Justice BELL, that, as an executive officer, a collector is not liable for acts done in the execution of his precept, apparently regular, and emanating from persons having authority over the subject. The ruling in this case is approved in Cunningham *v.* Mitchell, 17 P. F. Smith 78, and the doctrine, therein stated, reiterated. Now, there is no doubt about the power of the authorities of the borough of South Bethlehem to levy borough taxes, or that their warrant empowered Buck, the defendant below, to collect such taxes. It is also a fact that the property of Daniel Ritter, the prosecutor, had been assessed as lying in the aforesaid borough. The allegation, however, is that the assessment was irregular, in that the property was not embraced within the borough lines, and also because the duplicate, in which the assessment was made, was not returned to the county commissioners. There is no doubt about the correctness of this allegation, but then who was responsible for these mistakes? Surely not Buck; he had no power to revise what his superiors had done. Whether Ritter's property lay in the borough, or in Saucon township, could only be determined by a survey which the defendant had no power to make. He did what he could to ascertain the correctness of his duplicate; he had applied to the assessor and was by that officer informed that the assessment was correct; he had applied for an exoneration and was refused; there was, therefore, nothing left for him to do but to collect the taxes. It was not his business to revise the assessments or survey the borough lines, but it was his business, as a ministerial officer, to obey the directions of his warrant. The irregularity, in this case, is certainly no greater than that in Cunningham *v.* Mitchell, where the school directors had assessed a bounty tax, though the township had never agreed to pay bounties. The error, in the present case, originated with the assessor and county commissioners, for Snyder, the assessor, says the commissioners told him to put this assessment in the duplicate of South Bethlehem. Prima facie, then, Ritter's property was properly assessed in the borough, and though this was afterwards found to be a mistake, it would be out of all character to make the collector liable criminally for the fault of his superiors.

But, again, it was a mistake to suppose that an indictment, on a charge such as this, can be supported under the Act of May 27th 1841, Pamph. L. 400. The eighth section of that act, the one relied upon to sustain this indictment, is intended to prevent fraudulent voting. On what other hypothesis can the provisions be explained, that no county treasurer, county commissioner, or collector of taxes in any township, ward or district, nor any other person on his or their behalf, shall receive payment, or give any receipt for the payment of taxes that have not been duly assessed, and that neither of the persons above named shall receive payment,

9 NORRIS—8

[Buck *v.* Commonwealth.]

or give any receipt for the payment of any taxes, from the payment of which the party assessed has been exonerated according to law, unless the party so exonerated shall himself appear in his own proper person, and tender payment of the taxes from which he has been so exonerated. Now, it is very clear, that all this is directed against the voluntary payment and receipt of taxes, and not against the enforcement of such payment by legal process. And if it is not meant to prevent the use of tax receipts, improperly obtained, as a fictitious qualification for voting, then we know not what it does mean. For why, ordinarily, should one, who has been exonerated, not be permitted to pay his taxes by the hand of another, or why should he not be permitted, voluntarily, to pay a tax irregularly assessed?

It follows, from either view of the case, as above taken, that the defendant has been convicted without warrant of law.

The sentence of the Court of Quarter Sessions is reversed and set aside, and record remanded.